O

# United States District Court
# Central District of California

FILM ALLMAN, LLC,

    Plaintiff,

  v.

NEW YORK MARINE AND GENERAL INSURANCE COMPANY, INC.,

    Defendant.

Case № 2:14-cv-7069-ODW(RZx)

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND [23]**

## I. INTRODUCTION

The instant action arises from an insurance coverage dispute between insured, Film Allman, LLC ("Film Allman") and insurer, New York Marine and General Insurance Company, Inc. ("New York Marine"). Plaintiff filed a Motion for Leave to Amend its Complaint to include claims for coverage under the terms of four insurance policies, and damages arising from New York Marine's alleged bad faith breach of those terms.[1] For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion.[2] (ECF No. 23.)

---

[1] The policies are the CGL Policy, Umbrella Policy, WC Policy, and Producers Policy. (Mot. 6.)

[2] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL BACKGROUND

In June 2013, Film Allman, a production company, was established to produce a biopic about acclaimed musician Gregg Allman that would focus on the formation of The Allman Brothers and the band's explosion onto the music scene. (Compl. ¶ 8.) In connection with the film, and prior to the start of production, Film Allman procured various insurance policies from New York Marine, including a Motion Picture/Television Producers Portfolio Policy (the "Policy"). (*Id*. ¶ 11.) The Policy was effective from January 10, 2014 to January 10, 2015. (*Id*., Ex. A.)

The purpose of the Policy was to cover certain specialized risks associated with the film. (*Id*. ¶ 12.) The Policy contains several coverage sections, including "Cast Coverage," which covers "the actual and necessary loss [the insured] sustain[s] by reason of a Covered Person being prevented from commencing, continuing, or completing an assigned duty or role in an 'Insured Production.'" (*Id*.) The Policy's Cast Coverage is subject to limits of liability of $5 million for each loss. (*Id*.)

The Policy provides that New York Marine: "will pay [the insured] for covered loss or damage within thirty (30) days after we receive and accept a satisfactory sworn proof of loss, if you have complied with all the terms of this policy and: (a) we have reached agreement with you on the amount of loss; (b) a final judgment has been entered; or (c) an appraisal award has been made." (*Id*. ¶ 13.)

On the first day of filming, a train accident took the life of Sarah Jones, a second assistant camera technician, and injured several other crew members, including the film's director, Randall Miller. (*Id*. ¶ 14.) Film Allman immediately stopped production. (*Id*.) In addition to sustaining physical injuries from the accident, Miller was diagnosed with post-traumatic stress disorder. (*Id*.) As a result, Miller was physically and psychologically unable to continue filming for several months following the accident. (*Id*.)

Film Allman immediately notified New York Marine's managing agent,

ProSight Specialty Insurance Group, Inc. ("ProSight") of the accident. (*Id.* ¶ 15.) Based on the injury to and incapacity of Miller—a Covered Person under the Policy—Film Allman submitted a claim for Cast Insurance coverage under the Cast Coverage section of the Policy (the "Claim"). (*Id.*)

According to Film Allman, the production company "complied with all applicable terms and conditions under the Policy, including in connection with New York Marine's investigation of [the] Claim." (*Id.* ¶ 16.) Film Allman immediately made Miller available for an independent medical examination and provided ProSight's claims adjuster with detailed breakdowns of the shutdown and startup costs that Film Allman incurred and/or would incur as a result of Miller's incapacity, which were estimated to be in excess of $1.6 million. (*Id.*)

New York Marine initially disputed its obligations, but ultimately acknowledged that the Policy covered the Claim. (*Id.* ¶ 17.) In the interest of resuming production in a timely manner, the parties agreed that New York Marine would make weekly payments to provide Film Allman sufficient cash flow to resume production. (*Id.*) Film Allman also submitted to New York Marine proposed revisions to the film's script, casting, and shooting locations. (*Id.* ¶ 18.) New York Marine encouraged Film Allman to take any measures necessary in order to resume production in a timely manner. (*Id.*)

New York Marine made three payments per the agreed-upon schedule, and then refused to make any further payments. (*Id.* ¶ 19.) Film Allman alleges that it has been forced to absorb significant costs to cover the shortfall between the already-incurred costs of the shutdown and the expenses of resuming filming. (*Id.*)

On the eve of resuming production, New York Marine threatened to revoke the Policy and/or refused to continue to insure the film. (*Id.* ¶ 21.) New York Marine communicated to Film Allman that the film constituted a new insured production in light of the film focusing on the 1970s rock and roll scene generally instead of the life

of Gregg Allman. (*Id.*)

On August 12, 2014, Film Allman ("Plaintiff") filed suit against New York Marine ("Defendant") in Los Angeles Superior Court. (ECF No. 1.) The Complaint alleges (1) breach of contract; (2) anticipatory repudiation; (3) breach of the implied covenant of good faith and fair dealing; and seeks (4) declaratory relief. (Compl.) On September 10, 2014, Defendant removed the instant action to federal court. (ECF No. 1.)

On February 3, 2015, the Court issued a Scheduling Order. (ECF No. 16.) Pursuant to that Scheduling Order, the last date to amend pleadings or add parties was May 4, 2015. (*Id.*) On May 4, 2015, Plaintiff filed a Motion to Amend its Complaint. (ECF No. 23.) Defendant timely opposed. (ECF No. 27.) Plaintiff's Motion is before the Court for decision.

### III. LEGAL STANDARD

Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009). The decision whether to grant leave to amend rests in the sound discretion of the trial court. *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996); *California v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir. 2004).

The U.S. Supreme Court held that courts should freely grant leave to amend absent special circumstances, such as: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies with previous amendment; (4) prejudice to the opposing party; and (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The party opposing the amendment carries the burden of showing why leave to amend should be denied. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186–187 (9th Cir. 1987).

### IV. DISCUSSION

Plaintiff seeks leave to amend its Complaint to allege additional facts regarding

Defendant's actions in connection with the defense and settlement of *Jones v. Film Allman, LLC, et al.* and actions arising from the same accident that gave rise to the original Complaint. (Mot. 6.) New York Marine's alleged conduct, including an improper denial of coverage, improper attempt to withdraw its defense, and failure to properly defend, all support Plaintiff's breach of contract and bad faith causes of action. (*Id.*) Plaintiff seeks a determination of its rights under all relevant policies in a single action. (*Id.*) The original Complaint only alleges coverage under a single policy. (*Id.* at 7.)

Defendant contends that the Court should deny Plaintiff's request for leave to amend on the grounds that "there are no circumstances under which the plaintiff could prove any of its proposed allegations." (Opp'n 1.) Defendant concludes that "[b]ecause there is no coverage under any of the policies alleged by the plaintiff for any of the claims alleged, amendment would be futile and the request for leave to amend must, therefore, be denied." (*Id.* at 2.)

As the party opposing amendment, Defendant "carries the burden of showing why leave to amend should be denied." *DCD Programs, Ltd.*, 833 F.2d at 186–187. The Court finds that Defendant has failed to show the presence of any special circumstance that would warrant denial of leave to amend, including futility. *Foman*, 371 U.S. at 182. In its 7-page Motion, Plaintiff summarizes its new allegations and explains why there are no special circumstances that warrant denial of leave to amend. In its 25-page Opposition, Defendant mostly anticipates the specific facts that Plaintiff will allege in its amended Complaint. The Court does not find this approach persuasive.

Defendant does not dispute that Plaintiff's original Complaint alleges coverage under a single policy, and Plaintiff's new allegations allege coverage under four separate policies. The Court cannot determine the merit of Plaintiff's allegations regarding coverage under four separate policies without permitting Plaintiff to amend its Complaint and provide the specifics of those allegations. To conclude that

Plaintiff's proposed allegations are meritless without actually analyzing them would be premature and unjust.

### V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's Motion for Leave to Amend.  (ECF No. 23.)

**IT IS SO ORDERED.**

July 7, 2015

_____
             **OTIS D. WRIGHT, II**
        **UNITED STATES DISTRICT JUDGE**