O

# United States District Court
# Central District of California

FILM ALLMAN, LLC,

    Plaintiff,

    v.

NEW YORK MARINE AND GENERAL INSURANCE COMPANY, INC.,

    Defendant.

Case № 2:14-cv-7069-ODW(RZx)

**ORDER DENYING DEFENDANT'S MOTION TO SEVER OR, IN THE ALTERNATIVE, BIFURCATE [47]**

## I. INTRODUCTION

The instant action arises from an insurance coverage dispute between Plaintiff Film Allman, LLC ("Film Allman"), the insured, and Defendant, New York Marine and General Insurance Company, Inc. ("New York Marine"), the insurer. On July 7, 2015, this Court granted Plaintiff's Motion for Leave to Amend its Complaint to include claims for coverage under the terms of four insurance policies, and damages arising from New York Marine's alleged bad faith breach of those terms.[1] Defendant now moves the Court to (1) sever the defense claims and consolidate those claims with a related case pending before the Court, or (2) bifurcate the claims and

---

[1] The policies are the CGL Policy, Umbrella Policy, WC Policy, and Producers Policy. (Mot. 6.)

consolidate this case with the related case. For the reasons discussed below, the Court **DENIES** New York Marine's Motion.[2] (ECF No. 47.)

## II. FACTUAL BACKGROUND

In June 2013, Film Allman, a production company, was established to produce a biopic about acclaimed musician Gregg Allman that would focus on the formation of The Allman Brothers and the band's explosion onto the music scene. (Compl. ¶ 8.) In connection with the film, and prior to the start of production, Film Allman procured various insurance policies from New York Marine, including a Motion Picture/Television Producers Portfolio Policy (the "Policy"). (*Id.* ¶ 11.) The Policy was effective from January 10, 2014 to January 10, 2015. (*Id.*, Ex. A.)

The purpose of the Policy was to cover certain special risks associated with the film. (*Id.* ¶ 12.) The Policy contains several coverage sections, including "Cast Coverage," which covers "the actual and necessary loss [the insured] sustain[s] by reason of a Covered Person being prevented from commencing, continuing, or completing an assigned duty or role in an 'Insured Production.'" (*Id.*) The liability limit for the Policy's Cast Coverage is $5 million for each loss. (*Id.*)

The Policy provides that New York Marine "will pay [the insured] for covered loss or damage within thirty (30) days after we receive and accept a satisfactory sworn proof of loss, if you have complied with all the terms of this policy and: (a) we have reached agreement with you on the amount of loss; (b) a final judgment has been entered; or (c) an appraisal award has been made." (*Id.* ¶ 13.)

On the first day of filming, a train accident took the life of Sarah Jones, a second assistant camera technician, and injured several other crew members, including the film's director, Randall Miller. (*Id.* ¶ 14.) Film Allman immediately stopped production. (*Id.*) In addition to sustaining physical injuries from the accident, Miller was diagnosed with post-traumatic stress disorder. (*Id.*) As a result, Miller was

---

[2] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

physically and psychologically unable to continue filming for several months following the accident. (*Id*.)

Film Allman immediately notified New York Marine's managing agent, ProSight Specialty Insurance Group, Inc. ("ProSight") of the accident. (*Id*. ¶ 15.) Based on the injury to and incapacity of Miller—a "Covered Person" under the Policy—Film Allman submitted a claim for Cast Insurance coverage under the Cast Coverage section of the Policy (the "Claim"). (*Id*.)

According to Film Allman, the production company "complied with all applicable terms and conditions under the Policy, including in connection with New York Marine's investigation of [the] Claim." (*Id*. ¶ 16.) Film Allman immediately made Miller available for an independent medical examination and provided ProSight's claims adjuster with detailed breakdowns of the shutdown and startup costs that Film Allman incurred and/or would incur as a result of Miller's incapacity, which were estimated to be in excess of $1.6 million. (*Id*.)

New York Marine initially disputed coverage, but ultimately acknowledged that the Policy covered the Claim. (*Id*. ¶ 17.) In the interest of resuming production in a timely manner, the parties agreed that New York Marine would make weekly payments to provide Film Allman sufficient cash flow to resume production. (*Id*.) Film Allman also submitted to New York Marine proposed revisions to the film's script, casting, and shooting locations. (*Id*. ¶ 18.) New York Marine encouraged Film Allman to take any measures necessary in order to resume production in a timely manner. (*Id*.)

New York Marine made three payments under the agreed-upon schedule, and then refused to make any further payments. (*Id*. ¶ 19.) Film Allman alleges that it has been forced to absorb significant costs to cover the shortfall between the already-incurred costs of the shutdown and the expenses of resuming filming. (*Id*.)

On the eve of resuming production, New York Marine threatened to revoke the Policy and/or refuse to continue to insure the film. (*Id*. ¶ 21.) New York Marine

1  communicated to Film Allman that the film constituted a new insured production in
2  light of the film focusing on the 1970s rock and roll scene generally instead of the life
3  of Gregg Allman.  (*Id*.)

4  On August 12, 2014, Film Allman filed suit against New York Marine in Los
5  Angeles Superior Court.  (ECF No. 1.)  The Complaint alleges (1) breach of contract;
6  (2) anticipatory repudiation; (3) breach of the implied covenant of good faith and fair
7  dealing; and seeks (4) declaratory relief.  (Compl.)  On September 10, 2014,
8  Defendant removed the instant action to federal court.  (ECF No. 1.)

9  On May 4, 2015, Film Allman filed a Motion to Amend its Complaint.  (ECF
10 No. 23.)  Film Allman's original Complaint alleged coverage under a single policy,
11 and Film Allman's proposed amended complaint alleged coverage under four separate
12 policies.  Specifically, Film Allman sough leave to amend its Complaint to allege
13 additional facts regarding New York Marine's actions in connection with the defense
14 and settlement of *Jones v. Film Allman, LLC, et al.* and actions arising from the same
15 accident that gave rise to the original Complaint.  (Mot. 6.)  This Court granted
16 Plaintiff's Motion on July 7, 2015 and Plaintiff filed its FAC on July 8, 2015.  (ECF
17 Nos. 30, 31.)

18 New York Marine now moves the court to sever and consolidate, or in the
19 alternative, bifurcate and consolidate Film Allman's indemnity claims and defense
20 claims.  (ECF No. 47.)  Film Allman filed a timely Opposition, and New York Marine
21 a timely Reply.  (ECF Nos. 48, 50.)  The Motion is now before the Court.

### III.   LEGAL STANDARD

23 Pursuant to Federal Rule of Civil Procedure 21, the Court has broad discretion
24 to "at any time, on just terms . . . sever any claim against a party."  *See also Coughlin*
25 *v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).  In considering whether to sever a
26 claim under Rule 21, the following factors are to be considered: (1) whether the
27 claims arise out of the same transaction or occurrence; (2) whether the claims present
28 some common questions of law and fact; (3) whether settlement of the claims or

judicial economy will be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *SEC v. Leslie*, 2010 WL 2991038, at *4 (N.D. Cal. July 29, 2010). "Severance under Rule 21 is appropriate where a jury would likely be confused by the application of different bodies of law to similar claims." *Goodwin v. Citywide Home Loans, Inc.*, No. SACV 14-866-JLS JCGX, 2014 WL 5327191, at *4 (C.D. Cal. Oct. 17, 2014); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000).

## IV. DISCUSSION

New York Marine argues that Film Allman's indemnity claims and defense claims brought in this case should be severed from one another because those claims revolve around facts that occurred in different locations, among different individuals, over different spans of time, were unique to each insurance policy at issue and have little, if any, connection to each other. (Motion to Sever "Mot." 2, ECF No. 47.) Once severed, New York Marine argues that the defense claims should be consolidated with a related action against New York Marine currently pending before this Court that involves common questions of law and facts. (*Id.*)

Film Allman responds that by this Motion, New York Marine essentially seeks to undo the Court's order allowing Plaintiff to amend its complaint. (Opp'n 4.) That Order allowed Film Allman to add coverage claims relating to coverage under the Umbrella, CGL, WC Policies to its then existing claim under the Producer Policy. (ECF No. 30.) Film Allman's argument is unpersuasive; the standard for amending a complaint and the standard for severing claims are not identical, and by allowing Film Allman to bring additional claims, the Court did not decide that the claims were never subject to severance or bifurcation.

New York Marine argues that the indemnity claims alleged under the Producers Policy in this litigation relate solely to events and facts surrounding the production of

the film and certain special risks arising therefrom. (Mot. 11.) Conversely, it argues that the defense claims asserted under the CGL and WC policies arise out of New York Marine's defense of Film Allman and other insureds in the civil actions that resulted from the accident, New York Marine's settlement of the wrongful death action for full policy limits, and the potential coverage under New York Marine's insurance policies for the remaining civil actions. (*Id.* 13.) As such, New York Marine argues that the claims under the Producers Policy are first-party indemnity claims that are unrelated to the third-party defense claims alleged under the CGL and WC policies. (*Id.*)

The Court disagrees. Film Allman's claims in this suit arise from a "standard package" of related policies purchased at the same time, through the same broker, for the same purpose, and from the same insurer. As such, the facts and circumstances leading to these claims for coverage are inextricably tied together, and neither settlement nor judicial economy will be enhanced by severance or bifurcation. Film Allman's defense claims and indemnity claims against New York Marine shall not be separated or bifurcated as they arise from common questions of law and fact.

## V.  CONCLUSION

For the reasons discussed above, the Court **DENIES** New York Marine's Motion to Sever or Bifurcate. (ECF No. 47.)

**IT IS SO ORDERED.**

June 10, 2016

_____
 **OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**