LEON GLADSTONE (SBN 70967)
lgladstone@gladstoneweisberg.com
MICHAEL J. AIKEN (SBN 98786)
maiken@gladstoneweisberg.com
GLADSTONE WEISBERG, ALC
300 Corporate Pointe, Suite 400
Culver City, CA 90230
Tel: (310) 821-9000 • Fax: (310) 943-2764

Mark C. Goodman (SBN 154692)
mark.goodman@hoganlovells.com
David W. Skaar (SBN 265377)
david.skaar@hoganlovells.com
HOGAN LOVELLS US LLP
3 Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499

Attorneys for Defendant, New York Marine and General Insurance Company, Inc.

GLADSTONEWEISBERG, ALC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

FILM ALLMAN, LLC, a Georgia limited liability company,

Plaintiff,

vs.

NEW YORK MARINE and GENERAL INSURANCE COMPANY, INC., a New York corporation, and DOES 1-10,

Defendants.

CASE NO. 2:14-cv-07069-ODW-KLS

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Filed concurrently with:**
**(a) Notice of Motion and Motion for Partial Summary Judgment and supporting papers;**
**(b) Indexed Exhibits;**
**(c) Request for Judicial Notice;**
**(d) Proposed Statement of Decision**

DATE: November 7, 2016
TIME: 1:30 p.m.
CTRM: 11

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Pursuant to Central District of California Rule 56-1 and this Court's Scheduling Order, defendant New York Marine and General Insurance Company ("New York Marine"), as the moving party on the motion for partial summary judgment, submits this "Statement of Uncontroverted Facts and Conclusions of Law."

**PART I: UNCONTROVERTED FACTS**

**Note regarding reference to specific pages in exhibits**: Pursuant to Local Rule 11-5.2, each page of the Indexed Exhibits is numbered consecutively in the bottom right corner, beginning with "Indexed Exhib Page 015" (the first page of Exhibit A) and continuing to "Indexed Exhib Page 291" (Exhibit Z).

**All references to exhibit page numbers are to the consecutive (i.e., "Indexed Exhib Page" pagination)**, not to the document's original pagination (which may appear in parenthesis).

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 1. On February 20, 2014, a fatal train accident occurred on the "set" of *Midnight Rider* (the "Film"), a "biopic" about the Allman Brothers Band. | First Amended Complaint ("FAC") ¶¶ 2, 14, and 20. |
| 2. The scene was being shot on the Doctortown trestle bridge in or near Jessup, in Wayne County, Georgia. | 1. **Ex. D (Depo of Charles Baxter)** at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 060 (trans. p. 50), lines 2-4 and 23-24<br>—I.E. 061 (trans. p. 51), lines 3-17;<br><br>2. **Ex. B** (Depo of Film Allman, Miller as PMQ) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 037 (trans. p. 32), lines 5-17;<br><br>3. **Ex. E** (Miller OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 105 (trans. p. 115), lines 9-17 and, on same page, lines 22-25. |



GLADSTONEWEISBERG, ALC

| | |
|---|---|
| 3. Plaintiff is a limited liability company formed by filmmakers Randall Miller and Jody Savin as the production entity for the Film. | **FAC ¶¶ 7, 15**. |
| 4. Miller and Savin were officers of Film Allman LLC and operated it through their "loan-out" corporation, Unclaimed Freight. | 1. **Ex. Z** (Declaration of Jody Savin, ¶1);<br><br>2. FAC ¶ 2 (identifying Miller and Savin as "Film Allman's officers");<br><br>3. **Ex. E** (Miller OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 103 (trans. p. 17), line 22 to I.E. 104, line 24 (Unclaimed Freight is a "loan out" corporation whose only shareholders and officers are Miller and Savin);<br>—I.E. 104 (trans. p. 19), lines 7-20 (Film Allman includes him and his wife, no other employees)<br><br>4. **Ex. A** (Depo of Randall Miller) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 017 (trans. p. 18), lines 15-20 (Unclaimed Freight is just him and his wife);<br>—I.E. 018 (trans. p. 31), lines 9-15 (he and Savin "are the managing members but I think the manager [of Film Allman] is Unclaimed Freight.") |
| 5. Miller was the director of the Film. | **FAC ¶ 2**. |
| 6. Hillary Schwartz was an assistant director for the film. | 1. **Ex. A** (Depo of Randall Miller) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 020 (trans. p. 41), lines 3-7;<br><br>2. **Ex. N** (Plaintiff's Responses to Request for Admissions, Set 1) Nos. 37 and 38 (at I.E. 168). |
| 7. Jay Sedrish was Plaintiff's "unit production manager" and "line producer." | 1. **Ex. B** (Depo of Film Allman, Miller as PMQ) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 036 (trans. p. 22), lines 1-13;<br><br>2. **Ex. A** (Depo of Randall Miller) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 019 (trans. p. 40), line 25 to I.E. 020, line 2; |

GLADSTONEWEISBERG, ALC

| | |
|---|---|
| | 3. **Ex. N** (Plaintiff Responses to Request for Admission, Set 1), Nos. 30 and 31 (at I.E. 165-166). |
| 8. Charles Baxter was Plaintiff's location manager. | 1. **Ex. D (Depo of Charles Baxter)** at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 056 (trans. p. 15), lines 15-17;<br>—I.E. 063 (trans. p. 82), lines 14-19;<br><br>2. **Ex. Z** (Declaration of Jody Savin, ¶6);<br><br>3. **Ex. O** (Plaintiff Response to Request For Admissions, Set 3), No. 75;<br><br>4. **Ex. E** (Miller OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 106 (trans. p. 114), lines 1-2. |
| 9. Baxter's job responsibilities included getting permission to film from the proper authorities. | 1. **Ex. G** (Schwartz OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 137 (trans. p. 60), lines 4-13 ("That's part of his job as location manager to get permission from the proper authorities to shoot at these locations");<br><br>2. **Ex. A** (Depo of Randall Miller) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 025 (trans. p. 129), lines 14-15 (it was Charley's job to find these things"). |
| 10. Baxter reported to line producer Jay Sedrish. | 1. **Ex. B** (Depo of Film Allman, Miller as PMQ) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 036 (trans. p. 22), lines 18-24. |
| 11. CSX Transportation ("CSX") is a railroad company that operates trains and owns the track where Plaintiff planned to film. | 1. **Ex. A** (Depo of Randall Miller) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 023 (trans. p. 127), line 25 to I.E. 024, line 10 (admitting he "came to find out" that the accident occurred on "an active CSX line");<br><br>2. **Ex. D (Depo of Charles Baxter)** at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 053 (trans. p. 11), lines 15-17;<br>—I.E. 054 (trans. p. 12), line 24, to I.E. 955, line 13 (re experience filming on CSX property with its permission and his knowledge that CSX operates trains |

GLADSTONEWEISBERG, ALC

| | |
|---|---|
| | up and down the east coast);<br><br>3. **Ex. M**: (CSX responses to Interrogatories in Georgia state action) —Interrog. Nos. 2 (identifying the train involved in the accident and the track as its property), 3 and 7 (identifying its employees, including the train engineer).<br><br>4. **Ex. P** (Film Allman Responses to CSX Interrogatories in Georgia state action):<br>—at I.E. 177: Response to Interrog. No. 6 [accusing CSX of "improper train operation" and failing to send someone to remove Plaintiff's crew and equipment from the location] (implicitly admitting that CSX had authority to permit access and remove trespassers) and<br>—at I.E. 179: Response to Interrog. No. 17 (stating that Charles Baxter communicated with "individuals at CSX . . . regarding permission to film *on CSX property*" [emphasis added])<br><br>5. **Ex. B** (Depo of Film Allman, Miller as PMQ) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 033 (trans. p. 13), line 18 to I.E. 044, line 24 (conceding Film Allman's attorney will depose the CSX train drivers in Georgia state litigation);<br><br>6. see also, **FAC ¶ 51** (alleging that CSX asserted a claim for trespass against Film Allman based on the February 20, 2014, incident). |
| 12. Prior to the accident, Plaintiff's film crew was informed that CSX owned the trestle and track where Plaintiff wanted to film. | 1. **Ex. G** (Schwartz OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 132 (trans. p. 46), line 23 to I.E. 144, line 7 (she learned the tracks and trestle were owned by CSX);<br>—I.E. 136 (trans. p. 56), lines 1-3;<br>—I.E. 142 (trans. p. 95), lines 3-7;<br><br>2. **Ex. D (Depo of Charles Baxter)** at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 074 (trans. p. 115), line 24, to I.E. 075, line 15<br>—I.E. 076 (trans. p. 118), lines 17-19; |

GLADSTONEWEISBERG, ALC

| | |
|---|---|
| | 3. **Ex. F** (Sedrish OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 112 (trans. p. 102), lines 17-25 ("I knew then it was a CSX track");<br>—I.E. 113 (trans. p. 111), lines 4-19 (the film crew was aware that Rayonier, whose property was adjacent to CSX's track, did not control the railroad tracks);<br><br>4. **Ex. P** (Film Allman Responses to CSX Interrogatories in Georgia state action):<br>—at I.E. 178-179: Response to Interrogatory Nos. 16 and 17 (stating that Charles Baxter has knowledge of "the individuals at CSX with whom he had communications regarding permission to film *on CSX property*" [emphasis added]);<br><br>5. **Ex. L** (Sedrish email, sent the day before the accident, stating that "getting permission from the railroad company is almost impossible so we'll set up on Rayonier property and just move onto the tracks for 5 minutes at a time.") |
| 13. Baxter made several attempts to get permission from CSX to film on its railroad track. | 1. **Ex. D (Depo of Charles Baxter)** at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 059 (trans. p. 25), at lines 2-9 (he asked CSX for permission) and (on same page) at lines 20-25 (CSX never gave permission and told him "We have a no-film policy");<br><br>2. **Ex. G** (Schwartz OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 135 (trans. p. 55), lines 14-18 (Baxter trying to get permission from CSX "to use their trestle and tracks");<br>—I.E. 136 (trans. p. 56), lines 1-3;<br>—I.E. 142 (trans. p. 95), lines 3-7 (knew the tracks and trestle belonged to CSX);<br><br>3. **Ex. P** (Film Allman Responses to CSX Interrogatories in Georgia state action):<br>—at I.E. 178-179: Response to Interrogatory Nos. 16 and 17 (stating Baxter has knowledge of "the individuals ... with whom he had |

| | |
|---|---|
| | communication regarding permission to film on CSX property"); <br><br> 4. **Ex. F** (Sedrish OSHA testimony) at Indexed Exhibit ("I.E.") page numbers: —I.E. 114 (trans. p. 126), line 24 to I.E. 115, line 21 (the intent was to get permission by email). |
| 14. CSX never gave permission to film on its tracks. | 1. **Ex. D (Depo of Charles Baxter)** at Indexed Exhibit ("I.E.") page numbers: —I.E. 059 (trans. p. 25), lines 20-25; <br><br> 2. **Ex. C** (Depo of Jay Sedrish) at Indexed Exhibit ("I.E.") page numbers: —I.E. 050 (trans. p. 204), lines 6-16; <br><br> 3. **Ex. G** (Schwartz OSHA testimony) at Indexed Exhibit ("I.E.") page numbers: —I.E. 134 (trans. p. 48), lines 5-8; <br><br> 4. **Ex. H** (CSX Jan. 27 email to Baxter); <br><br> 5. **Ex. J** (CSX Feb 20 email to Baxter); <br><br> 6. **Ex. M**, CSX response to Interrogatory No. 2; <br><br> 7. **Ex. R** (transcript of Miller plea hearing) at I.E. 202, line 23, to I.E. 203, line 1 (Miller admission that he is "in fact" guilty of criminal trespass and involuntary manslaughter "as charged" in the indictment—i.e., entering and staying upon CSX property after notice that permission had been denied) <br><br> 8. **Ex. A** (Depo of Randall Miller) at Indexed Exhibit ("I.E.") page numbers: —I.E. 029 (trans. p. 193), line 22 to I.E. 030, line 6 (affirming the truth of his admission of factual guilt in the criminal proceedings; <br><br> 9. see also, **FAC ¶ 51** (CSX filed a cross-claim against Film Allman for trespass in connection with state actions described in FAC ¶¶ 32 and 33). |

GLADSTONEWEISBERG, ALC

| | |
|---|---|
| 15. Baxter first attempted to get permission from CSX in January, so that Plaintiff could film a scene depicting Gregg Allman riding a motorcycle on the track. | 1. **Ex. D (Depo of Charles Baxter)** at Indexed Exhibit ("I.E.") page numbers: —I.E. 059 (trans. p. 204), lines 6-16;<br><br>3. **Ex. A** (Depo of Randall Miller) at Indexed Exhibit ("I.E.") page numbers: —I.E. 022 (trans. p. 120), lines 2-7. |
| 16. On January 27, 2014, Baxter received an email from CSX denying his request for permission to film. | 1. **Ex. D (Depo of Charles Baxter)** at Indexed Exhibit ("I.E.") page numbers: —I.E. 069 (trans. p. 102), line 13 to I.E. 070, line 14;<br>—I.E. 071 (trans. p. 104), lines 4-8;<br><br>2. **Exhibit H** (January 27 email from CSX denying permission);<br><br>3. **Ex. C** (Depo of Jay Sedrish) at Indexed Exhibit ("I.E.") page numbers: —I.E. 050 (trans. p. 204), lines 6-16. |
| 17. CSX's January 27 email to Baxter stated that CSX did not permit filming on its property for safety and security reasons and to ensure on-schedule train operations and for those reasons "we are unable to accommodate your request." | 1. **Exhibit H**;<br><br>2. **Ex. D (Depo of Charles Baxter)**, at Indexed Exhibit ("I.E.") page numbers: —I.E. 071 (trans. p. 104), lines 4-8. |
| 18. Baxter forwarded the January 27 email to other Film Allman employees. | 1. **Ex. D (Depo of Charles Baxter)**, at Indexed Exhibit ("I.E.") page numbers: —I.E. 071 (trans. p. 104), lines 17-24;<br><br>2. **Ex. G** (Schwartz OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 134 (trans. p. 48), lines 5-8; |
| 19. After receiving CSX's email denying permission to film, Film Allman cut the motorcycle scene from the screenplay. | 1. **Ex. A** (Depo of Randall Miller) at Indexed Exhibit ("I.E.") page numbers: —I.E. 022 (trans. p. 120), lines 2-19;<br><br>2. **Ex. B** (Depo of Film Allman, Miller as PMQ) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 035 (trans. p. 20), lines 11-15;<br><br>3. **Ex. P**: Film Allman responses to CSX Interrogs No. 20 (at I.E. 181); |

| | |
|---|---|
| | 4. **Ex. F** (Sedrish OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 110 (trans. p. 82), lines 12-21;<br><br>5. **Ex. G** (Schwartz OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 137 (trans. p. 60), lines 1-3. |
| 20. The Film Allman crew also planned to shoot the scene on or near the "Doctortown" trestle bridge. | 1. **Ex. B** (Depo of Film Allman, Miller as PMQ) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 037 (trans. p. 32), lines 5-17;<br><br>2. **Ex. D (Depo of Charles Baxter)**, at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 074 (trans. p. 115), lines 9-20 (noting it is the "Doctortown" trestle);<br><br>3. **Ex. I** (Baxter's email to CSX requesting permission to film at "Doctor Town" trestle);<br><br>4. **Ex. E** (Miller OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 107 (trans. p. 115), lines 22-25;<br><br>5. **Ex. F** (Sedrish OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 111 (trans. p. 88), lines 14-19. |
| 21. The scene called for the film crew to place a hospital bed across the railroad track. | 1. **Ex. D (Depo of Charles Baxter)**, at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 065 (trans. p. 94), lines 2-22;<br>—I.E. 069 (trans. p. 102), lines 4-12;<br>—I.E. 077 (trans. p. 119), lines 2-5 (the plan was to put a bed on the tracks on the trestle);<br>—I.E. 079 (trans. p. 138), lines 3-6.<br><br>2. **Ex. B** (Depo of Film Allman, Miller as PMQ) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 040 (trans. p. 35), lines 9-22. |
| 22. Baxter proposed a "Plan B" alternative, to put the bed on adjacent property, with the trestle in the | 1. **Ex. D (Depo of Charles Baxter)**, at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 078 (trans. p. 137), line 9 to I.E. 079, line 8. |

GLADSTONEWEISBERG, ALC

| | |
|---|---|
| background, but the idea was rejected. | |
| 23. Baxter was assisted by Tina Kicklighter and others in his attempts to get permission from CSX. | 1. **Ex. D (Depo of Charles Baxter)**, at Indexed Exhibit ("I.E.") page numbers: —I.E. 079 (trans. p. 138), line 20 to I.E. 080, line 16; and —I.E. 081 (trans. p. 140), lines 1-4 and 18-25; |
| 24. By February 14, 2014, as they approached the commencement of principal photography, the various "department heads" at Film Allman were asking Baxter whether they had been given permission to shoot the scene on the trestle. | 1. **Ex. D (Depo of Charles Baxter)**, at Indexed Exhibit ("I.E.") page numbers: —I.E. 082 (trans. p. 143), line 10 to I.E. 083, line 10;<br><br>2. **Ex. G** (Schwartz OSHA testimony) at Indexed Exhibit ("I.E.") page numbers: —I.E. 139 (trans. p. 74), lines 13-22. |
| 25. On February 14, 2014, Baxter received a phone call from Carla Groleau of CSX. | 1. **Ex. D (Depo of Charles Baxter)**, at Indexed Exhibit ("I.E.") page numbers: —I.E. 084 (trans. p. 145), lines 16-20;<br><br>2. **Ex. M**: (CSX responses to Interrogatories in state action) at —Interrog. No. 3 (identifying CSX "Communications Director" Carla Groleau as a person with knowledge of relevant acts) |
| 26. Ms. Groleau told Baxter that CSX had a "no-film" policy, said that she would see what she could do to help, and asked that he send her an email with a specific request to film and setting out the "who, what, where, and when." | 1. **Ex. D (Depo of Charles Baxter)**, at Indexed Exhibit ("I.E.") page numbers: —I.E. 085 (trans. p. 146), lines 2-25. |
| 27. That evening, Baxter sent Groleau an email requesting permission to film. | 1. **Ex. D (Depo of Charles Baxter)**, at Indexed Exhibit ("I.E.") page numbers: —I.E. 086 (trans. p. 147), line 23 to I.E. 087, line 13;<br><br>2. **Exhibit I** (Baxter's email). |
| 28. The email was jointly composed by | 1. **Ex. D (Depo of Charles Baxter)**, at |

| | |
|---|---|
| Baxter and two other Film Allman employees, Hillary Schwartz and Jay Sedrish. | Indexed Exhibit ("I.E.") page numbers: —I.E. 086 (trans. p. 147), line 23, to I.E. 088, line 4;<br><br>2. **Ex. F** (Sedrish OSHA testimony) at Indexed Exhibit ("I.E.") page numbers: —I.E. 118 (trans. p. 140), line 24 to I.E. 119, line 24;<br><br>3. **Ex. G** (Schwartz OSHA testimony) at Indexed Exhibit ("I.E.") page numbers: —I.E. 138 (trans. p. 69), lines 12-15. |
| 29. Baxter's email to Groleau requested permission for the film crew "to access CSX tracks" at "Rayonier's Jessup Mill location" near the Doctortown trestle on February 20, 2014, between 4 p.m. and 6 p.m. "for 20 minutes." | 1. **Exhibit I** (copy of email)**.** |
| 30. As of the time he sent the email, Baxter and others at Film Allman were aware that CSX had not granted permission to be on its tracks. | 1. **Ex. D (Depo of Charles Baxter)**, at Indexed Exhibit ("I.E.") page numbers: —I.E. 068 (trans. p. 98), lines 1-19; —I.E. 089 (trans. p. 157, line 17 to I.E. 090, line 15; —I.E. 092 (trans. p. 160), line 15 to I.E. 093, line 16;<br><br>2. **Ex. G** (Schwartz OSHA testimony) at Indexed Exhibit ("I.E.") page numbers: —I.E. 134 (trans. p. 48), lines 5-8. |
| 31. On the morning of February 20, 2014, CSX sent Baxter an email denying permission to film on the tracks and suggesting he "reach out to the short line railroads, as they routinely support filming . . ." | 1. **Ex. D (Depo of Charles Baxter)**, at Indexed Exhibit ("I.E.") page numbers: —I.E. 090 (trans. p. 158), lines 16-25; —I.E. 091 (trans. p. 159), lines 15 to 25; —I.E. 093 (trans. p. 161), lines 17-24;<br><br>2. **Ex. F** (Sedrish OSHA testimony) at Indexed Exhibit ("I.E.") page numbers: —I.E. 116 (trans. p. 138), line 23 to I.E. 117, line 8; —I.E. 120 (trans. p. 151), lines 16-18 ("We thought we were going to get permission right up until we didn't get permission that morning"); —I.E. 122 (trans. p. 153), lines 1-17; |

| | |
|---|---|
| | —I.E. 123 (trans. p. 154, line 12 to I.E., 124, line 3;<br><br>3. **Exhibit J** (copy of the email). |
| 32. Baxter forwarded the email to others at Film Allman, including Sedrish and addressees "uncfreight" and "hillaryschwartz", within minutes of the time he received it. | 1. **Ex. D (Depo of Charles Baxter)**, at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 094 (trans. p. 162), lines 15-25;<br><br>2. **Ex. F** (Sedrish OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 122 (trans. p. 153), lines 1-17;<br><br>3. **Exhibit K** (copy of email showing forwarding addresses). |
| 33. Baxter also discussed the email with 10 or 12 others at Film Allman, including Jay Sedrish. | 1. **Ex. D (Depo of Charles Baxter)**, at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 057 (trans. p. 22), line 11 to I.E. 058, line 4;<br>—I.E. 095 (trans. p. 163), line 14 to I.E. 096, line 23;<br>—I.E. 098 (trans. p. 275), line 11 to I.E. 100 (Baxter told 10 or 12 people about the CSX email stating there was no permission to be on the railroad track);<br><br>2. **Ex. F** (Sedrish OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 120 (trans. p. 151), lines 22-24;<br>—I.E. 121 (trans. p. 152), line 25 to I.E. 122, line 6;<br><br>3. **Ex. G** (Schwartz OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 140 (trans. p. 92), lines 17-25;<br>—I.E. 141 (trans. p. 93), lines 6 to 10. |
| 34. Despite the CSX email, the Film Allman crew prepared to go to the CSX tracks to film. | 1. **Ex. D (Depo of Charles Baxter)**, at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 097 (trans. p. 167), lines 13-23;<br>see also:<br>—I.E. 064 (trans. p. 93), line 11 to I.E. 065, line 1 (the "department heads" told him they were going to film whether they had CSX's permission or not);<br><br>2. **Ex. F** (Sedrish OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 120 (trans. p. 151), lines 16-24 |



GLADSTONEWEISBERG, ALC

| | |
|---|---|
| | (had that discussion with Charley);<br>—I.E. 126 (trans. p. 161), lines 1-6 ("I knew ... we were thinking of going on there without their support");<br>—I.E. 127 (trans. p. 162), lines 12-16 (saying he's "sure" he discussed it with Miller, "but we went out there and we were planning to film out there");<br><br>3. **Ex. A** (Depo of Randall Miller) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 026 (trans. p. 143), line 21 to I.E. 027, line 15 (filming took place on the trestle after receipt of CSX's email). |
| 35. Plaintiff's crew, vehicles, and equipment arrived at the trestle location sometime between 2:15 p.m. and 2:45 p.m. | 1. **Ex. B** (Depo of Film Allman, Miller as PMQ) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 038 (trans. p. 33), lines 3-21. |
| 36. After two trains passed, Plaintiff's crew placed a bed on the tracks, perpendicular to the rails, and began filming. | 1. **Ex. B** (Depo of Film Allman, Miller as PMQ) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 039 (trans. p. 34), lines 1-21 and, on the same page, lines 18-22;<br>—I.E. 040 (trans. p. 35), lines 2-6.<br><br>2. **Ex. F** (Sedrish OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 128 (transcript p. 172), line 19 to I.E. 129, line 13 (two trains came through while he was there). |
| 37. Members of Plaintiff's crew, including Schwartz and Sedrish, knew that they had been denied permission to film on railroad property. | 1. **Ex. D (Depo of Charles Baxter)**, at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 098 (trans. p. 275), line 11 to I.E. 100, line 2 (he told 10 or 12 people in the production office about the CSX email stating there was no permission to be on the railroad track)<br><br>2. **Ex. G** (Schwartz OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 143 (trans. p. 102), line 23 to I.E. 144, line 4 (admitting that she was aware they were trespassing on the |

| | |
|---|---|
| | tracks and trestle).<br><br>3. **Ex. F** (Sedrish OSHA testimony) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 120 (trans. p. 151), lines 16-17 ("we though we were going to get permission ... until we didn't get permission that morning");<br>—I.E. 125 (trans. p. 156), lines 7-8 (calling this "a nonforceful no compared to the other forceful no"). |
| 38. The accident occurred when a train came through while the crew and the bed were still on the track. | 1. **Ex. B** (Depo of Film Allman, Miller as PMQ) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 040 (trans. p. 35), line 18 to I.E. 041, line 11. |
| 39. The accident caused the death of Sara Jones, an assistant camera technician. | 1. **FAC ¶ 20**. |
| 40. The incident resulted in a criminal indictment (the "Indictment") issued in or about September 2014 by the Wayne County Grand Jury against Miller, his wife Jody Savin, and two others involved in the production, Jay Sedrish, and Hillary Schwartz. | 1. **FAC ¶¶ 2 and 5**;<br><br>2. **Exhibit Q** (copy of Indictment);<br><br>3. **Ex. B** (Depo of Film Allman, Miller as PMQ) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 042 (trans. p. 37), line 3-22 (identifying the indictment);<br>—I.E. 044 (trans. p. 39), line 16 to I.E. 045, line 3 (this is the indictment to which he later pled guilty); |
| 41. Count 1 of the Indictment charged Miller, Savin, Sedrish, and Schwartz with criminal trespass (OCG §16-7-21(b)) in that each, on February 20, 2014, entered upon the railroad tracks and trestle located at Doctortown Landing in Wayne County, after receiving notice from the owner, CSX Transportation, Inc., that such entry was denied. | 1. **Exhibit Q** (copy of Indictment);<br><br>2. **Ex. B** (Depo of Film Allman, Miller as PMQ) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 042 (trans. p. 37), line 3-22 (admitting Count 1 was for trespass). |

GLADSTONEWEISBERG, ALC

| | |
|---|---|
| 42. Each of the next five counts in the Indictment was for involuntary manslaughter, each count directed against a particular defendant (Count 2 against Miller, Count 3 against Savin, Count 4 against Sedrish, and Count 5 against Schwartz), for causing the death of Ms. Jones by the commission of the unlawful act of trespass on CSX property. | 1. **Exhibit Q** (copy of Indictment**).** |
| 43. As of February 20, 2014, Miller was an employee of Film Allman. | 1. **Ex. N** (Plaintiff's Responses to Request for Admissions, Set 1) Nos. 23, 24, 25, and 26 (at I.E. 162-164);<br><br>2. **Ex. Z** (Declaration of Jody Savin, ¶5). |
| 44. As of February 20, 2014, Jay Sedrish was an employee of Film Allman. | 1. **Ex. N** (Plaintiff's Responses to Request for Admissions, Set 1) Nos. 30 and 31 (at I.E. 165-166);<br><br>2. **Ex. Z** (Declaration of Jody Savin, ¶5). |
| 45. As of February 20, 2014, Hillary Schwartz was an employee of Film Allman. | 2. **Ex. N** (Plaintiff's Responses to Request for Admissions, Set 1) Nos. 37 and 38 (at I.E. 168);<br><br>2. **Ex. Z** (Declaration of Jody Savin, ¶5). |
| 46. The two counts against Miller were based on his entry upon the CSX tracks without its permission and the resulting train accident. | 1. **Ex. Q** (Indictment);<br><br>2. **FAC ¶ 2**;<br><br>3. **Ex. R** (transcript of Miller plea hearing) at I.E. 193, line 6, through I.E. 198, line 2;. |
| 47. On March 9, 2015, proceedings were held in the Superior Court of Wayne County, State of Georgia, in the | 1. **Ex. R** (transcript of Miller plea hearing), I.E. 186-222, including in particular:<br>—I.E. 190, lines 7-24, |



GLADSTONEWEISBERG, ALC

GLADSTONEWEISBERG, ALC

| | |
|---|---|
| matter of *State of Georgia vs. Randall Miller*, Case No. 14-CR-323, on the charges of criminal trespass and involuntary manslaughter in the Indictment. | —I.E. 205 (trans. p. 20, lines 1-4; |
| 48. Randall Miller was placed under oath during the hearing. | 1. **Ex. R** (transcript of Miller plea hearing), I.E. 186-222, including in particular:<br>—I.E. 191, lines 1-3. |
| 49. During the hearing, Miller stated that he wanted to enter a plea of guilty to both charges. | 1. **Ex. R** (transcript of Miller plea hearing) at:<br>—I.E. 191, lines 15-23. |
| 50. During the hearing, Miller admitted he was "in fact" guilty as charged in each count of the Indictment. | 1. **Ex. R** (transcript of Miller plea hearing) at:<br>—I.E. 190, lines 16-24 (plea changed to guilty);<br>—I.E. 191, lines 1-3 (defendant is sworn);<br>—I.E. 191, line 11 to I.E. 192, line 18;<br>—I.E. 202, line 14 to I.E. 303, line 1 (admitting that he is "in fact" guilty of criminal trespass and involuntary manslaughter "as charged" in the indictment);<br><br>2. **Ex. A** (Depo of Randall Miller) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 029 (trans. p. 193), line 22 to I.E. 030, line 6;<br><br>3. **Ex. B** (Depo of Film Allman, Miller as PMQ) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 042 (trans. p. 37), line 3-22;<br>—I.E. 044 (trans. p. 39), line 16 to I.E. 045, line 3 (identifying the exhibit as the indictment to which he pled guilty);<br><br>4. **Ex. N** (Plaintiff's Responses to Request for Admissions, Set 1) Nos. 25 and 26 (at I.E. 163-164);<br><br>5. **Ex. S** (Order). |
| 51. Miller testified truthfully when he admitted the adequacy of the proof to authorize the imposition of a verdict of | 1. **Ex. A** (Depo of Randall Miller) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 028 (trans. p. 192), line 22 to I.E. 029, line 21. |

| | |
|---|---|
| guilty and when he testified that he was in fact guilty of the crimes of trespass and manslaughter as charged in Counts 1 and 2 of the Indictment. | |
| 52. Based on Miller's admissions, the trial court found there was a factual basis for a guilty plea, that it could be entered, and that Randall Miller was guilty of criminal trespass and involuntary manslaughter as charged in Counts 1 and 2 of the Indictment. | 1. **Ex. R** (transcript of Miller plea hearing) at:<br>—I.E. 203, lines 2 to 16;<br>—I.E. 205, lines 6-9. |
| 53. Miller was found guilty on both counts, sentenced to 10 years, with 2 years to be served in county jail and the remainder on probation, and fined $20,000. | 1. **Ex. N** (Plaintiff's Responses to Request for Admissions, Set 1) Nos. 25 and 26 (at I.E. 163-164);<br>2. **Ex. R** (transcript of Miller plea hearing) at:<br>—I.E. 219, line 24 to I.E. 220, line 18;<br>3. **Ex. S** (Order), at I.E. 223-224. |
| 54. On March 10, 2015, proceedings were held in the Superior Court of Wayne County, State of Georgia, in the matter of *State of Georgia vs. Hillary Schwartz*, Case No. 2014-SU-CR-00323-D. | 1. **Ex. V** (transcript of Schwartz hearing). |
| 55. Schwartz was found guilty after trial on the charges of criminal trespass and involuntary manslaughter. | 1. **Ex. N** (Plaintiff's Responses to Request for Admissions, Set 1) Nos. 35 and 36 at I.E. 167-168 (admitting she "submitted to an abbreviated trial ... resulting in a conviction");<br>2. **Ex. V** (transcript of Schwartz hearing) at:<br>—I.E. 278, lines 15-20. |
| 56. Schwartz was sentenced to 10 years' confinement, to be served on probation, and fined $5,000. | 1. **Ex. V** (transcript of Schwartz hearing) at:<br>—I.E. 283, lines 3-15; |

| | |
|---|---|
| | 2. **Ex. B** (Depo of Film Allman, Miller as PMQ) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 043 (trans. p. 38), line 19 to I.E. 045, line 3. |
| 57. On March 9, 2015, Sedrish was found guilty on Counts 1 and 4 under an *Alford* plea. | 1. **Ex. N** (Plaintiff's Responses to Request for Admissions, Set 1) Nos. 28 and 29 at I.E. 164-165 (admitting Sedrish "entered a negotiated Alford plea");<br><br>2. **Ex. C** (Depo of Jay Sedrish) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 049 (trans. p. 45), lines 1-18;<br><br>3. **Ex. T** (transcript of Sedrish hearing) at:<br>—I.E. 231, line 7 to I.E. 233, line 8;<br>—I.E. 239, lines 14-24<br><br>4. **Ex. U** (order);<br><br>5. **Ex. B** (Depo of Film Allman, Miller as PMQ) at Indexed Exhibit ("I.E.") page numbers:<br>—I.E. 045 (trans. p. 40), lines 16-18. |
| 58. Sedrish was sentenced to 10 years' confinement, to be served on probation and fined $10,000. | 1. **Ex. T** (transcript of Sedrish hearing) at:<br>—I.E. 241, lines 2-8;<br><br>2. **Ex. U** (order);<br><br>3. **Ex. B** (Depo of Film Allman, Miller as PMQ) at Indexed Exhibit ("I.E.") page numbers<br>—I.E. 045, lines 16-18. |
| 59. Prior to the commencement of production, Film Allman procured multiple insurance policies from New York Marine. | 1. **FAC ¶¶ 1, 17**;<br><br>2. **Ex. Z** (Declaration of Jody Savin, ¶4). |
| 60. One of the policies (which is the subject of this motion) was a Producers Policy (the "Policy"), a copy of which is | 1. **FAC ¶¶ 1, 17, 18**;<br><br>2. **FAC Ex. 1**. |

| | |
|---|---|
| attached as Exhibit 1 to Plaintiff's First Amended Complaint. | |
| 61. The Policy includes multiple coverages, each directed to certain risks. | 1. **FAC ¶ 18** (alleging Policy "contains several coverage parts");<br><br>2. **Ex. W** (Policy Declarations and Schedule of Forms, taken from FAC Ex. 1, showing coverages such as "Cast Coverage," "Props, Sets & Wardrobe," "Animal Coverage," "Extra Expense," etc.) |
| 62. One of the coverages provided by the Policy is called "Cast Coverage." | 1. **FAC ¶ 18**;<br><br>2. **Ex. W**. |
| 63. The Cast Coverage applies to certain losses sustained "by reason of a Covered Person being prevented from commencing, continuing, or completing an assigned duty or role in an 'Insured Production.'" | 1. **FAC ¶ 18**.<br><br>2. **Ex. Y** (page 1 of Cast Coverage form, taken from FAC Ex 1) |
| 64. Under the heading "EXCLUSIONS APPLICABLE TO ALL COVERAGES OF THIS POLICY", the Policy states: "We will not pay for loss or damage caused by or resulting from . . . (1) Dishonest or criminal acts committed by: (a) You, any of your partners . . . employees . . ." | 1. **Ex. X** (page from Policy Conditions, taken from FAC Ex 1) |
| 65. The Cast Coverage is limited to loss caused by or resulting from a "Covered Cause of Loss," which is defined as "accidental injury, sickness or death . . . *except* those causes of loss *listed in the Exclusions*. [Emphasis added]" | 1. **Ex. Y** (page 1 of Cast Coverage form, taken from FAC Ex. 1) |
| 66. Miller and other members of the crew were injured as a result of the February 20, 2014, accident. | 1. **FAC ¶ 20**. |

GLADSTONEWEISBERG, ALC

| | |
|---|---|
| 67. After the accident, Plaintiff notified New York Marine of various claims in regard to the policies, including a civil claim by the railroad, CSX, against Film Allman for trespass. | 1. **FAC ¶¶ 3, 32, 33, and 51.** |
| 68. Plaintiff submitted a claim under the Cast Coverage based on Miller's injuries. | 1. **FAC ¶ 21.** |
| 69. The criminal actions against Miller, Sedrish, and Schwartz were directly related to the claim in issue. | 1. **FAC ¶ 5**;<br>2. **Ex. Q** (Indictment). |
| 70. In March 2014, New York Marine reserved all rights under the Policy, including the right to disclaim any obligation to Film Allman. | 1. **FAC ¶ 3**. |

GLADSTONEWEISBERG, ALC

## PART II: CONCLUSIONS OF LAW

1. The Court has jurisdiction of this action, pursuant to 28 U.S.C. § 1332.
2. The exclusion for losses caused by criminal acts of Plaintiff's employees in the Producer's Policy of insurance attached as Exhibit 1 to Plaintiff's First Amended Complaint (the "Policy") is unambiguous as a matter of law. *20th Century Ins. Co. v. Stewart*, 63 Cal. App. 4th 1333, 1338 (1998); *20th Century Ins. Co. v. Schurtz*, 92 Cal. App. 4th 1188, 1195-1196 (2001).
3. The objectively reasonable expectations of the insured under the Policy are that a loss caused by the acts of trespass that occurred on February

20, 2014, would not be covered. *Century National Ins. Co. v. Glenn*, 86 Cal. App. 4th 1392, 1397 (2001).

4. Plaintiff's claimed loss on the Policy, which is the subject of the first, second, and third causes of action, is not covered under the terms and conditions of the Policy.
5. New York Marine did not breach the terms and conditions of the Policy.
6. New York Marine did not repudiate any of its obligations under the Policy.
7. New York Marine did not breach the implied covenant of good faith and fair dealing, as alleged in Plaintiff's third cause of action.
8. New York Marine is entitled to summary judgment on Plaintiff's first cause of action, for breach of contract.
9. New York Marine is entitled to summary judgment on Plaintiff's second cause of action, for anticipatory breach.
10. New York Marine is entitled to summary judgment on Plaintiff's third cause of action, for breach of the implied covenant of good faith and fair dealing;
11. On the Plaintiff's Eighth Cause of Action, for declaratory relief, to the extent the requested declaration of rights applies to the Producer's Policy (i.e., Exhibit 1 to the FAC), Plaintiff's loss is excluded from coverage and New York Marine has no obligation to pay for losses claimed under the Policy's Cast Coverage.

Dated: October 5, 2016

GLADSTONEWEISBERG, ALC

By: /s/ Michael J. Aiken
LEON GLADSTONE
MICHAEL J. AIKEN
Attorneys for Defendant, New York Marine and General Insurance Company, Inc.

GLADSTONEWEISBERG, ALC

## CERTIFICATE OF SERVICE

I hereby certify that on **October 5, 2016**, a copy of the following document was filed electronically:

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's System:

| | |
|---|---|
| Douglas W. Gastelum<br>Email: dwg@dwglegal.com<br>Douglas W. Gastelum, Esq.<br>235 East Broadway, 8th Floor<br>Long Beach, CA 90802 | Attorneys for Plaintiff Film Allman, LLC |
| Mark C. Goodman<br>Email:mark.goodman@hoganlovells.com<br>David W. Skaar<br>Email: david.skaar@hoganlovells.com<br>Hogan Lovells US LLP<br>3 Embarcadero Ctr., Suite 1500<br>San Francisco, CA 94111 | Attorneys for Defendant New York Marine and General Insurance Company, Inc. |

DATED: October 5, 2016 GLADSTONEWEISBERG, ALC

By: /s/ Michael J. Aiken
LEON GLADSTONE
MIKE AIKEN
Attorneys for Defendant, New York Marine and General Insurance Company, Inc.