O

# United States District Court
# Central District of California

| | |
|---|---|
| FILM ALLMAN, LLC,<br><br>                 Plaintiff,<br><br>    v.<br><br>NEW YORK MARINE AND GENERAL<br>INSURANCE COMPANY, INC.,<br><br>              Defendant. | Case № 2:14-cv-7069-ODW(KSx)<br><br>**ORDER DENYING PLAINTIFF'S<br>MOTION FOR LEAVE TO AMEND<br>[72] AND GRANTING<br>DEFENDANT'S MOTION FOR<br>PARTIAL SUMMARY JUDGMENT<br>[66]** |

## I.    INTRODUCTION

Plaintiff Film Allman, LLC's ("Film Allman") Motion for Leave to Amend (ECF No. 72) and Defendant New York Marine and General Insurance Company's ("New York Marine") Motion for Partial Summary Judgment (ECF No. 66) are currently pending before the Court.  In the interests of efficiency, the Court addresses

both Motions together in this Order.[1]   For the reasons discussed below, the Court **DENIES** Film Allman's Motion and **GRANTS** New York Marine's Motion.

## II.   FACTUAL BACKGROUND

This case relates to a dispute over insurance coverage for a party to a lawsuit, which in turn stems from a train accident on a film set.  In 2013, filmmakers Randall Miller and Jody Savin established Film Allman as a production entity to create a biopoic about the formation of the musical group The Allman Brothers and the band's explosion onto the music scene.  (*See* First Am. Compl. ("FAC") ¶ 1, ECF No. 31.) At the time, New York Marine insured Film Allman under a Motion Picture/Television Producers Portfolio Policy.  (*Id.*)  On February 20, 2014, a fatal accident occurred on the set of the film.  (Statement of Uncontroverted Facts ("SUF") ¶ 1, ECF No. 67.)  The accident occurred while Film Allman employees were filming a scene on a train trestle bridge and tracks in Wayne County, Georgia.  (*Id.* ¶ 2.)  On set were filmmakers Miller and Savin, director Hillary Schwartz, unit production manager and line producer Jay Sedrish, and location manager Charles Baxter, among others.  (*Id.* ¶¶ 3–8.)   The accident occurred when a train operated by CSX Transportation ("CSX") came through while the crew was still on the tracks, resulting in the death of an assistant camera technician.  (*Id.* ¶¶ 38, 39.)

Baxter communicated with CSX prior to the accident regarding permission for Film Allman to film on the train tracks.  (*Id.* ¶ 13.)  However, CSX never gave such permission.  (*Id.* ¶ 14.)  Specifically, on the morning of February 20, 2014, the day of the accident, CSX sent Baxter an email denying permission to film on the tracks.  (*Id.* ¶ 31.)   After the accident, Miller, Savin, Sedrish, and Schwartz were indicted for criminal trespass.  (*See id.* ¶ 41.)

Following the accident, Film Allman became the subject of several civil lawsuits.  (FAC ¶ 5.)  Due to disagreements with New York Marine over settlements

---

[1] After considering papers filed in support of and in opposition to the Motions, the Court deems both matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

1   in the underlying actions and payment for the loss, Film Allman filed the instant
2   action.  (*See id.*)

3       Film Allman asserts that it should be given leave to add parties and causes of
4   action to its Complaint following New York Marine's recent production of documents
5   and information Film Allman learned in the course of litigating the underlying actions.
6   (Mot. for Leave.)  At the same time, New York Marine seeks to have this Court enter
7   summary judgment as to Film Allman's first, second, third, and eighth causes of
8   action.  (Mot. for Partial Summ. J. ("MPSJ").)

9                          III.   **DISCUSSION**

10      The Court will first discuss its reasons for denying Film Allman's Motion for
11  Leave to Amend before moving on to address New York Marine's Motion for Partial
12  Summary Judgment.

13  **A.    Leave to Amend**

14      Film Allman asserts that due to the recent discovery of facts supporting
15  additional claims not pleaded in its First Amended Complaint, it should be allowed to
16  add those claims now.  (Mot. for Leave 2.)  Further, it argues that because those
17  additional claims should be brought on behalf of its "natural person managers," Jody
18  Savin and Randall Miller, those individuals should be added as plaintiffs in the action.
19  (*Id.*)

20      **1.    Legal Standard**

21      When a party moves to amend a pleading beyond the deadline set in the
22  scheduling order, it must first show "good cause" for relief from the deadline.  Fed. R.
23  Civ. P. 16(b)(4); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th
24  Cir. 1992).  "Rule 16(b)'s 'good cause' standard primarily considers the diligence of
25  the party seeking the amendment."  *Johnson*, 975 F.2d at 609.  "[C]arelessness is not
26  compatible with a finding of diligence and offers no reason for a grant of relief.
27  Although the existence or degree of prejudice to the party opposing the modification
28  might supply additional reasons to deny a motion, the focus of the inquiry is upon the

moving party's reasons for seeking modification.  If that party was not diligent, the inquiry should end." *Id.* (citations omitted).

If the moving party establishes good cause, the party opposing amendment must then show that the proposed amendment should not be allowed under Federal Rule of Civil Procedure 15.  *See id.* at 608 (citing *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987)).  Under Rule 15, "[f]our factors are commonly used to determine the propriety of a motion for leave to amend.  These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *DCD Programs, Ltd v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (citations omitted).  While the Rule 15 factors should be analyzed with "extreme liberality" toward favoring amendment, *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981), the moving party cannot "appeal to the liberal amendment procedures afforded by Rule 15" unless it first "satisf[ies] the *more stringent* 'good cause' showing required under Rule 16." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 952 (9th Cir. 2006) (original emphasis).

### 2.    Analysis

Film Allman incorrectly argues that Federal Rule of Civil Procedure 15(a)(2) applies in this case.  (*See* Mot. for Leave at 6.)  Because Film Allman is asking for leave to add parties beyond the date set in the Scheduling Order, Rule 16 applies, requiring "good cause" for doing so. Fed. R. Civ. P. 16(b)(4); *Johnson*, 975 F.2d at 607–08.

The Court determines that Film Allman has not adequately shown good cause for such an amendment.  Film Allman states that it has discovered additional information giving rise to claims on behalf of putative plaintiffs Savin and Miller, but it does not specifically describe how that information changed the scope of its knowledge or makes adding parties appropriate at this late date. (*See* Mot. for Leave 2.)  Film Allman has known about these putative plaintiffs since the beginning of this action, and their alleged status as insureds does not arise from the facts recently

discovered but has been present throughout the litigation.  (FAC ¶¶ 2, 34.)  In sum, Film Allman has not carried its burden of showing it was diligent despite not adding these parties before the cut-off date set in the Scheduling Order.

The defective nature of Film Allman's Motion for Leave to Amend is reflected in the fact that Film Allman does not style its request as one to add parties, nor does it include the names of the putative plaintiffs on the caption of its proposed amendment as required by Federal Rule of Civil Procedure 10.  (*See* Mot. for Leave; Proposed Second Am. Compl., Ex. 11, ECF No. 72.)  Moreover, Film Allman's Reply does not even address New York Marine's extensive arguments regarding the applicability of Rule 16.  (*See* Reply, ECF No. 80.)  As a result, the Court is left to conclude that Film Allman is attempting to circumvent the rules on adding parties to this action.

Finally, as Film Allman acknowledges, putative plaintiffs Savin and Miller can bring their action against New York Marine separately.  (Mot. for Leave 7.)  Because Film Allman has not established good cause for adding them to this action at such a late date, the Court **DENIES** the Motion for Leave to Amend.

**B.    Partial Summary Judgment**

New York Marine seeks partial summary judgment as to Film Allman's first, second, and third causes of action, as well as its eighth cause of action insofar as it concerns the "Producer's Policy" of the insurance contracts at issue.  (*See* MPSJ.)  New York Marine argues that Film Allman's employees committed a criminal act, and thus an exclusion of the insurance policy applies and voids coverage.  (*See id.* at 1.)  Film Allman's first and second causes of action are for breach of contract and anticipatory breach of contract; New York Marine argues that because the criminal act exclusion applies, there can be no breach, anticipatory or otherwise.  (*See* FAC ¶¶ 58–71; MPSJ 14–24.)  Similarly, New York Marine contends that the third cause of action for breach of the implied covenant of good faith and fair dealing must fail as a matter of law because of a lack of contractual obligation on New York Marine's part.  (*See* FAC ¶¶ 72–77; MPSJ 25–28.)  Finally, New York Marine's position is that there

can be no declaratory relief (Film Allman's eighth cause of action) where there is no underlying contractual obligation.  (*See* FAC ¶¶ 106–115; MPSJ 28–29.)

## 1.     Legal Standard

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment on the asserted causes of action as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250.  The burden is on the moving party to demonstrate that it is entitled to summary judgment.  *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998); *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.*, 707 F.2d 1030, 1033 (9th Cir. 1983).  That is, the moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party has the burden at trial, "that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial."  *Celotex*, 477 U.S. at 331.  The burden then shifts to the non-moving party "and requires that party . . . to produce evidentiary materials that demonstrate the existence of a 'genuine issue' for trial."  *Id.*; *Anderson*, 477 U.S. at 256; Fed. R. Civ. P. 56(c).  A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In ruling on a motion for partial summary judgment, the Court construes the evidence in the light most favorable to the non-moving party.  *Barlow v. Ground*, 943 F. 2d 1132, 1135 (9th Cir. 1991); *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).  Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat

summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### 2. Analysis

Because the Court determines that the relevant facts in the context of these causes of action are undisputed, it concludes that partial summary judgment is warranted on those counts.

#### i. *No Dispute as to Relevant Facts*

The relevant facts for these causes of action boil down to two basic elements: first, whether the policy at issue contains a valid exclusion for loss resulting from criminal activity, and second, whether the loss at issue did in fact result from criminal activity.

#### a. *The policy contains a valid exclusion for loss resulting from criminal activity*

The parties do not dispute that the policy contains the following language:

> V. EXCLUSIONS APPLICABLE TO ALL COVERAGES OF THIS POLICY . . . .
> b. We will not pay for loss or damage caused by or resulting from any of the following:
> (1) Dishonest or criminal acts committed by:
> (a) You, any of your partners, members, officers, managers, employees, leased employees . . . .

(SUF ¶ 64.) However, Film Allman argues that the policy contains a "saving clause" that obfuscates the meaning of the criminal act exclusion. (Opp'n to MPSJ 3, ECF No. 74.) The portion of the policy that Film Allman calls a "saving clause" states, "But if any of these results in a Covered Cause of Loss, we will pay for the loss or

damage caused by that Covered Cause of Loss." (Exhibit Producers Portfolio Policy 18, Ex. 1, FAC.) Film Allman argues that this language renders the exclusion ambiguous, requiring analysis beyond what a court can undertake at the summary judgment stage. (*See* Opp'n to MPSJ 3–4.)

The problem with Film Allman's argument is that it cites the "saving clause" out of context. Looking at the "EXCLUSIONS APPLICABLE TO ALL COVERAGES OF THIS POLICY" section as a whole, the cited language does not refer to the criminal activity exclusion. (Exhibit Producers Portfolio Policy 18, Ex. 1, FAC.) Instead, it directly follows language regarding an exclusion for "Discharge, dispersal, seepage, migration, release or escape of 'Pollutants' or environmental impairment of any kind." (*See id.*) In reading the full section, it is clear that the "saving clause" applies only to the pollution exclusion section. (*See id.*) In addition, the "saving clause" is immediately followed by a definition of the word "pollutants." (*Id.*) The exclusions section then goes on to describe two additional, separate types of exclusions. (*Id.*) This context demonstrates that Film Allman's argument regarding the "saving clause" is unsupported by the policy itself. Thus, the Court determines that there is no genuine dispute or ambiguity concerning the policy's criminal act exclusion.

### b.    The loss at issue resulted from criminal activity

Georgia's statute for criminal trespass states in relevant part:

> (b) A person commits the offense of criminal trespass when he or she knowingly and without authority: . . . .
> (2) Enters upon the land or premises of another person . . . after receiving, prior to such entry, notice from the owner, rightful occupant, or, upon proper identification, an authorized representative of the owner or rightful occupant that such entry is forbidden . . . .

Ga. Code Ann. § 16-7-21.

Here, the Court determines that Film Allman's employees entered onto the land in question.  That the film crew was present on the train tracks is not disputed; indeed, the train accident in question could not have happened but for the crew's presence on the tracks.  (*See* SUF ¶¶ 35, 36.)  Further, there is no contention that Film Allman owned the land or the train tracks in question.  Thus, the Court can establish that the land and tracks constitute "the land or premises of another person."  *See* Ga. Code Ann. § 16-7-21.  Specifically, the land was owned by CSX.  Film Allman argues that the owner of the tracks is unknown (*see* Opp'n to MPSJ 11–12), but the evidence directly contradicts this and supports the conclusion that CSX is the owner.  (*See* Miller Depo. 24, Ex. A, ECF No. 68 (Miller admitting he learned after the accident that the site was an active CSX line).)

In addition, Film Allman's employees received notice from CSX prior to entry that such entry was forbidden.  Film Allman's film crew knew that CSX owned the tracks.  (Occupational Safety and Health Administration ("OSHA") Examination Under Oath of Hillary Beth Schwartz 132–144, Ex. G, ECF No. 68 (director Schwartz admitting knowledge, prior to the accident, of CSX's ownership of the tracks); Baxter Depo. 74–76, Ex. D, ECF No. 68 (location manager Baxter admitting knowledge, prior to the accident, of CSX's ownership of the tracks).)   And, Film Allman's employees received denials every time they solicited permission from CSX to use the tracks, including on the morning of the accident.  (Baxter Depo. 59 (referencing an e-mail in which CSX advised Film Allman of its no-film policy); OSHA Examination Under Oath of Jay Sedrish 116–17 (acknowledging the e-mail received from CSX the morning of February 20, 2014, denying access to film on the tracks in question).)  Moreover, Baxter acknowledged forwarding the e-mail to Miller, Savin, Sedrish, Schwartz, and others within minutes of his having received it.  (Baxter Depo. 94.)  Film Allman's arguments that it was not denied permission to film on the tracks prior to the accident are conclusory and unsupported.  The evidence shows that Film

1   Allman employees knew that they had been denied permission to film on the tracks
2   prior to the accident on February 20, 2014.

3          Finally, Film Allman's presence on the tracks resulted in the loss at issue in the
4   underlying insurance disputes.  Film Allman attempts a semantics argument to refute
5   this, stating that the presence of the train in the area where the crew was filming was
6   the intervening cause of the accident.  (*See* Opp'n to MPSJ 17.)  Film Allman invokes
7   a California common law rule providing for insurance coverage when an "efficient"
8   cause of a loss is a risk covered under the policy, even if excluded risks may have also
9   contributed to the loss.  (*See id.* at 9.)  Film Allman's argument appears to be that
10  although its employees' presence on the tracks is an excluded cause of the loss, the act
11  of the train striking people and objects would be a covered cause of loss.  (*See id.*)
12  Film Allman misstates the law.  For this "efficient proximate cause" rule to apply,
13  there must be two separate and distinct risks, one covered and one excluded by the
14  policy, either one of which could have occurred independently of the other and caused
15  the damage at issue.  *Finn v. Continental Ins. Co.*, 218 Cal. App. 3d 69, 72 (1990).
16  That is not the case here.  The train did not run off its tracks, nor were the film crew
17  pushed onto the tracks by some force beyond their control.  Without the crew's
18  unauthorized presence on the tracks, the accident would not have occurred.  Any
19  argument to the contrary regarding causation is illogical.

20         In conclusion, the Court determines that there is a valid exclusion in the
21  insurance policy for criminal acts, and that exclusion was triggered here.

22              ii.     ***Appropriateness of Summary Judgment on these Causes of***
23                      ***Action***

24         Because the exclusion applies to the loss at issue, Film Allman cannot prevail
25  on its first cause of action for breach of contract.  In order to show that a defendant
26  has breached a contract, a plaintiff must prove that nonperformance of the contract is
27  unjustified.  *See, e.g.*, *Central Valley General Hops. V. Smith*, 162 Cal. App. 4th 501,
28  514 n.3 (2008); Restatement (Second) of Contracts § 251, subd. (1).   Here, the

1  application of the criminal acts exclusion justifies New York Marine's
2  nonperformance.   As such, the Court **GRANTS** New York Marine's Motion for
3  Partial Summary Judgment as to Film Allman's first cause of action.

4  Film Allman's second cause of action for anticipatory breach of contract cannot
5  survive summary judgment for similar reasons.  An anticipatory breach occurs "when
6  the promisor without justification and before he has committed a breach makes a
7  positive statement to the promise indicating he will not or cannot substantially
8  perform his contractual duties."  *Daum v. Superior Court, Sutter Cnty.*, 228 Cal. App.
9  2d 283, 288 (1964).  In the facts of this case, the "without justification" aspect of
10 anticipatory breach is missing.  As established above, New York Marine was justified
11 in failing to carry out the terms of the contract, since Film Allman's conduct triggered
12 the criminal acts exclusion.  Thus, its statements to Film Allman that it would not
13 carry out the terms (FAC ¶¶ 69, 71) were not "without justification."  Therefore, the
14 Court **GRANTS** New York Marine's Motion for Partial Summary Judgment as to
15 Film Allman's second cause of action.

16 Next, Film Allman's third cause of action also fails because the criminal acts
17 exclusion of the policy applies.  The third cause of action is for breach of the implied
18 duty of good faith and fair dealing, or insurance bad faith.  (FAC ¶¶ 72–77.)  Because
19 coverage is excluded, New York Marine's refusal to pay cannot have been in bad
20 faith.  A cause of action for insurance bad faith is "auxiliary" to the primary right of
21 receiving the benefits of the contract.  *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136,
22 1153 (1990).  Where the primary right is absent, "the auxiliary implied covenant has
23 nothing upon which to act as a supplement, and should not be endowed with an
24 existence independent of its contractual underpinnings."  *Id.*  The primary right of
25 receiving the benefits of the contract is absent here because the criminal act exclusion
26 applies.  Therefore, there can be no implied covenant of good faith and fair dealing,
27 and the Court thusly **GRANTS** New York Marine's Motion for Partial Summary
28 Judgment as to Film Allman's third cause of action.

Finally, Film Allman's eighth cause of action asks for declaratory relief as to each of the four insurance policies attached to the First Amended Complaint.  (FAC ¶¶ 107, 108, 115.)  However, there can be no rights or obligations to declare where coverage is excluded.  Because the criminal acts exclusion appearing in the Producer's Policy has been triggered, the Court **GRANTS** New York Marine's Motion for Partial Summary Judgment as to Film Allman's eighth cause of action as it relates to the Producer's Policy.

## IV.  CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's Motion for Leave to Amend (ECF No. 72) and **GRANTS** Defendant's Motion for Partial Summary Judgment as to Film Allman's first, second, and third causes of action, as well as the eighth cause of action insofar as it concerns the Producer's Policy. (ECF No. 66).

**IT IS SO ORDERED.**

December 7, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**