# United States District Court
# Central District of California

| | |
|---|---|
| FILM ALLMAN, LLC, <br><br>    Plaintiff, <br><br>    v. <br><br>NEW YORK MARINE AND GENERAL INSURANCE COMPANY, INC., <br><br>    Defendant. | Case № 2:14-cv-7069-ODW(KSx) <br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [93] AND DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION [108]** |

## I. INTRODUCTION

Before this Court is Defendant New York Marine and General Insurance Company, Inc.'s ("New York Marine") Motion for Summary Judgment, which requests that the Court find no genuine issues of fact as to Plaintiff Film Allman, LLC's ("Film Allman") remaining five causes of action. (ECF No. 93.) After the hearing on this motion but before the Court issued its ruling, Film Allman filed a Motion for Reconsideration of the Court's earlier Order granting partial summary judgment in favor of New York Marine. (ECF No. 108.) The Court finds that Film

Allman's motion is appropriate for decision without further briefing or argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

For the reasons discussed below, the Court **GRANTS** New York Marine's Motion for Summary Judgment and **DENIES** Film Allman's Motion for Reconsideration.

## II. FACTUAL BACKGROUND

As has been extensively discussed in previous orders in this action, this case stems from a train accident on a film set that took the life of camera operator Sarah Jones and injured several other people. (First Am. Compl. ("FAC") ¶ 2, ECF No. 31.) New York Marine was Film Allman's insurer against claims arising from the making of the film, among other areas of coverage. (*See* Def. Statement of Uncontroverted Facts ("SUF") ¶ 10, ECF No. 94-1.) There are three relevant insurance policies at issue: a Commercial General Liability Policy ("the CGL Policy"), a Commercial Liability Umbrella Policy ("the Umbrella Policy"), and a Workers Compensation and Employers Liability Policy ("the WC Policy"). (*Id.* ¶¶ 11, 25, 30.) The CGL Policy insured against "bodily injury" or "property damage," expressly excluding claims arising from "any obligation of the insured under a workers' compensation . . . law or any similar law." (*Id.* ¶¶ 12, 13; CGL Policy § (I)(2)(d), Ex. W, ECF No. 93-25.) Further, the CGL Policy excludes from coverage "bodily injury to an employee of the insured arising out of and in the course of employment to the insured; or performing duties related to the conduct of the insured's business." (CGL Policy § (I)(2)(e).) The CGL Policy has a limit of $1 million "per occurrence." (*Id.* at "Declarations page".)

The Umbrella Policy was retained to pay any loss that is covered by the CGL Policy but in excess of the limits of the CGL Policy. (Umbrella Policy § (I)(A)(1)-(2), Ex. X, ECF No. 93-26.) The Umbrella Policy has a limit of $4 million "per occurrence." (*Id.* at "Declarations page".) Finally, the WC Policy insured Film Allman against "benefits required of [it] by the workers compensation law." (WC Policy Part Two, Ex. Y, ECF No. 93-27.) In addition, the WC Policy provides

"employers liability" insurance against "bodily injury to [Film Allman's] employee that arises out of and in the course of employment, claimed against [Film Allman] in a capacity other than as employer." (*Id.* at Part Two § (B)(4).) The "employers liability" section of the policy expressly excludes from coverage "any obligation imposed by a workers compensation . . . benefits law, or any similar law." (*Id.* at Part Two § (C)(4).)

After Film Allman provided notice of the train accident, New York Marine retained counsel in order to defend Film Allman and its principals against any litigation that arose. (SUF ¶¶ 74–99.) Predictably, litigation did follow, the most significant case being one brought by Sarah Jones's parents ("the *Jones* action"). (*See id.* ¶ 100; Pompeii Decl. 38, ECF No. 93-1.) Other injured parties also sued. (*See* SUF ¶ 102.) In addition, the injured parties (including the estate of Sarah Jones) filed Workers Compensation claims with the employer of record (the payroll company), Ease. (*See* Sedrish Dep. at 174:12-18, ECF No. 93-5.)

Mediation to settle the *Jones* action and the other crew members' lawsuits began in November 2014. (*Id.* ¶ 125.) Ostensibly because the potential liability of the *Jones* action was highest—with estimates in excess of $10 million—most of the settlement efforts were directed toward that suit. (*See id.* ¶¶ 128, 133, 150.) On November 6, 2014, the *Jones* action was settled for a total of $6.5 million. Of this, New York Marine paid $5 million (the $1 million limits of the CGL Policy plus the $4 million limits of the Umbrella Policy). (*See id.* ¶ 157, 159; Pompeii Decl. ¶ 74.) Rayonier Performance Fibers, LLC ("Rayonier"), the company that owned the land on which the train accident occurred, contributed the remaining $1.5 million. (*See* SUF ¶¶ 153, 154, 160.)

Because payment of the *Jones* settlement exhausted both the CGL and Umbrella Policies, New York Marine advised Film Allman that New York Marine's duty to defend in connection with the train accident had ended. (SUF ¶ 170.) This left Film Allman to shoulder the cost of defending those actions without insurance.

(*See generally* FAC.) As such, Film Allman demanded that New York Marine continue to defend it in the underlying suits. (*Id.*) When it refused, Film Allman filed the instant suit. (*Id.*)

Because the Court granted New York Marine's earlier partial summary judgment motion (ECF No. 92), only five causes of action remain in this case: breach of contract relating to both the CGL Policy and the WC Policy, breach of the implied covenant of good faith and fair dealing with respect to both policies, and declaratory relief.

## III. DISCUSSION

The Court will discuss its reasons for granting New York Marine's Motion for Summary Judgment before addressing Film Allman's Motion for Reconsideration.

### A. Motion for Summary Judgment

The Court finds that there is no genuine issue of material fact remaining in this matter.

#### 1. Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer*, 198

F.3d 1130, 1134 (9th Cir. 2000). Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott*, 550 U.S. at 378.

**2. Analysis**

After individually analyzing each of Film Allman's causes of action, the Court finds that there is no genuine dispute of material fact as to any of the causes of action.

***i. Breach of Contract***

To state a claim for breach of contract, a party must allege each of the following elements: "(1) the existence of a contract; (2) the party's performance under the contract or an excuse for nonperformance; (3) the defendant's breach; and (4) resulting damages. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1035 (C.D. Cal. 2015). Film Allman argues that in discontinuing its defense of the underlying actions, New York Marine breached both the CGL Policy and the WC Policy.

**a. CGL Policy**

New York Marine argues that it has already fulfilled its duty under the CGL policy. Under this policy, New York Marine had express duties to (1) defend Film Allman and other insureds against any claim for a "potentially covered" loss; and (2) indemnify any "actually covered" loss. (CGL Policy, "Coverage C".)

That duty to defend arises as soon as an insured tenders a claim that involves a potentially covered loss. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993). A carrier has the right to pay up to the policy limits in order to resolve a covered claim. *See Seltzer v. Barnes*, 182 Cal. App. 4th 953, 967 (2010). Once a carrier expends the limits of a policy in defending an action, then its duty to the insured is extinguished, provided that the policy expressly provides that the duty to defend terminates upon exhaustion of policy limits. *Ins. Co. of State of Pa. v. Cent. Garden & Pet Co.*, No. C-06-3924-VRW, 2006 WL 3734640, at *7 (N.D. Cal. Dec. 18, 2006). Here, the CGL Policy did contain such language. (CGL Policy §

(I)(1)(a)(2).)

In opposition, Film Allman argues that New York Marine did not explain which policy it was defending under, and as such, Film Allman was kept in the dark regarding whether and when its coverage under the policy would expire. (Opp'n 12–13, ECF No. 96.) It claims that the first time it was informed that the *Jones* action settlement would exhaust the duty to defend was at the settlement conference. (*Id.* at 11–12.) Film Allman also makes much of the fact that New York Marine allegedly failed to reserve its rights or communicate its coverage positions. (*Id.* at 13–15.) It also claims that New York Marine should have provided a more rigorous defense rather than simply settling the action; for instance, Film Allman argues that New York Marine could have successfully defended the *Jones* action and the other lawsuits under the Exclusive Remedy doctrine. (*See id.* at 5.) In short, Film Allman is dissatisfied with the way New York Marine handled the settlement of *Jones* and the subsequent denial of continuing coverage.

However, Film Allman's dissatisfaction does not create a genuine issue of fact as to whether New York Marine breached the CGL Policy. The controlling law is clearly on the side of the insurer here. First, the Court notes the California rule that if an insurer does not settle a case within policy limits and ends up exposing the insured to an excess judgment at trial, the insurer may be liable for bad faith. *See Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 941 (1976). Thus, New York Marine had the motivation and right to settle *Jones* for the full $5 million policy limits. Film Allman argues that it should have been entitled to independent counsel. However, it is well settled that when an insurer defends without a reservation of rights, it has the right to control the defense. *Peterson v. Reliance Ins. Co.*, 5 Fed. Appx. 687, 688 (9th Cir. 2001); *see also Carolina Casualty Ins. Co. v. Bolling, Walter & Gawthrop*, No. Civ.S-04-2445FCDPAN, 2005 WL 1367096, at *7 (E.D. Cal. May 31, 2005) ("[a] contrary rule would . . . place the insurer in the untenable position of being financially liable, but powerless to ensure the claim is properly defended."). Moreover, Film Allman's

allegation that New York Marine wrongly failed to reserve its rights is strange and unconvincing, since New York Marine chose not to reserve any rights in its defense of the underlying action. (Pompeii Dep. at 102, Ex. T, ECF No. 99-22.) Perhaps most importantly, New York Marine had the right under the CGL Policy to settle *Jones* (CGL Policy § (I)(1)(a)(2)), and therefore, the *Buss* rule regarding exhaustion of coverage kicks in. *See Buss v. Superior Court*, 16 Cal. 4th 35, 46 (1997) (finding that the duty to defend may be extinguished "if it is shown that no claim can in fact be covered"). Film Allman takes the position now, in hindsight, that the Exclusive Remedy doctrine would have been a foolproof defense. In reality, New York Marine had the right to protect against the possibility that the *Jones* action plaintiffs would prevail and expose it to much larger liability. *See Am. W. Door & Trim v. Arch Specialty Ins. Co.*, No. CV 15–00153 BRO SPX, 2015 WL 1266787, at *3 (C.D. Cal Mar. 18, 2015) (finding that California case law upholds the legality of insurance contract provisions that grant the insurer the unilateral right to settle a case). In sum, while Film Allman would have liked for its insurer to extend coverage beyond what Film Allman actually paid for rather than use up the policy limits dispensing with one case, there is no support for this.

### b. WC Policy

Next, Film Allman argues that even if the limits of the CGL Policy were properly exhausted, New York Marine should have continued to defend under the WC Policy. (*See* Opp'n 8–11.) This position does not work either. First, Part 1 of the WC Policy provides that the Worker's Compensation coverage only kicks in where Film Allman is required to pay out benefits under applicable Worker's Compensation Law. (*See* WC Policy, "Part 1".) The California Supreme Court has held that this type of language in a policy covers *only* Worker's Compensation Benefits, *not* defense of civil suits relating to on-the-job injuries. *See La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal. 4th 27, 42 (1994). The reason this means that there is no coverage under Part 1 is because Film Allman was never required to pay Worker's

Compensation benefits—the injured employees only filed Worker's Compensation claims against the payroll company, Ease. (*See* Sedrish Dep. at 174:12-18.) Therefore, there is no coverage for this situation under Part 1 of the WC Policy.

Part 2 of the Policy provides "gap filler" coverage for any claims relating to employee injuries *not* covered under applicable Worker's Compensation law. (*See* WC Policy, "Part 2".) This provision is inapplicable because there were no injuries falling outside the scope of Worker's Compensation laws; all of the injured parties were able to file Worker's Compensation claims against Ease (which had its own separate Worker's Compensation Insurance not provided by New York Marine). (Payroll Services Agreement §§ 7.3, 7.9, Ex. C, ECF No. 93-4.) Thus, Film Allman cannot state a claim for breach under the WC Policy as a matter of law.

Because the Court finds that Film Allman's claim for breach of contract fails as to both policies, the Court **GRANTS** New York Marine's Motion for Summary Judgment with respect to causes of action four and six, corresponding with breach of the CGL Policy and the WC Policy.

### *ii.* *Breach of the Implied Covenant of Good Faith and Fair Dealing*

Film Allman's fifth and seventh causes of action are for breach of the implied covenant of good faith and fair dealing with respect to both policies. In California, a breach of the covenant occurs when a party "engages in objectively unreasonable conduct, regardless of the actor's motive." *Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc.*, 596 F. Supp. 2d 1351, 1368 (E.D. Cal. 2009); *see also Carma Dev'rs (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 372 (1992).

Here, New York Marine was not obligated to continue defending Film Allman. As discussed above, the Court finds that New York Marine correctly assessed that its coverage had expired with the settlement of the *Jones* action. Therefore, it did not act objectively unreasonably. *See Copelan v. Infinity Ins. Co.*, 192 F. Supp. 3d 1063, 1066 (C.D. Cal. 2016) ("where there is no breach of the insurance contract, the insurer cannot be liable for breach of the implied covenant of good faith and fair dealing.").

For this reason, the Court **GRANTS** New York Marine's Motion for Summary Judgment with respect to Film Allman's fifth and seventh causes of action.

### *iii. Declaratory Relief*

Lastly, Film Allman's eighth cause of action is for declaratory relief. Because declaratory relief cannot stand alone as a separate cause of action without an underlying claim, the Court **GRANTS** New York Marine's motion as to this claim given that it also grants the motion as to each of the other claims. *See Nguyen v. JP Morgan Chase Bank*, No. SACV-11-01908 DOC (ANx), 2012 WL 29436, at *4 (C.D. Ca. Feb. 1, 2012) ("A claim for declaratory relief is not a stand-alone claim, but rather depends on whether or not Plaintiff states some other substantive basis for liability").

**B. Motion for Reconsideration**

Film Allman's Motion for Reconsideration is a thinly-veiled attempt to prolong this litigation, and the Court will not allow it.

**1. Legal Standard**

"Motions for reconsideration are disfavored and should be granted only in rare circumstances." *United States v. Vistoso Partners, LLC*, No. CV10-0444 PHX DGC, 2011 WL 2550387, at *1 (D. Ariz. June 27, 2011); *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (reconsideration is "an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources'" (citations omitted)). The Local Rules of this district limit the grounds on which a party may move for reconsideration to:

> (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

C.D. Cal. L.R. 7-18. The Local Rules expressly prohibit the movant from "in any manner repeat[ing] any oral or written argument made in support of or in opposition to

the original motion." *Id.*

In addition, the district courts in the Ninth Circuit have held that "'after thoughts' or 'shifting of ground' do not constitute an appropriate basis for reconsideration." *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of Interior*, 624 F. Supp. 2d 1197, 1208 (E.D. Cal. 2009) (citations omitted); *see also Karpenski v. Am. Gen. Life Cos., LLC*, 999 F. Supp. 2d 1235, 1239 (W.D. Wash. 2014) ("Motions for reconsideration are not a vehicle for a litigant to attempt a second bite at the apple by raising facts or arguments available to him or her prior to the entry of summary judgment."). The Ninth Circuit has similarly held that "[a] district court d[oes] not abuse its discretion in declining to consider an argument raised for the first time on reconsideration without a good excuse." *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 811 (9th Cir. 1995); *see also Kona Enters.*, 229 F.3d at 890.

**2.     Analysis**

Film Allman bases its Motion for Reconsideration on what is in essence a rumor: that the FBI is currently investigating the criminal prosecution arising from the train accident.[1] (Mot. for Reconsideration 3.) Because the Court's Order granting partial summary judgment on December 8, 2016, was based in large part on the criminality of trespassing on the train tracks, Film Allman suggests that the Court should revisit that decision on the basis that the criminality is now in dispute. (*See* Order Denying Pl. Mot. for Leave to Amend and Granting Def. Mot. for Partial Summ. J., ECF No. 66.) The problem with this argument is that there is no evidence that the FBI investigation has uncovered any new facts or has reached any sort of conclusion that would benefit Film Allman. Indeed, at present, Film Allman offers only meager secondhand knowledge of an ongoing investigation. This is not a valid basis for reconsideration.

---

[1] Film Allman provides "evidence" of the FBI's investigation in the form of affidavits from attorneys stating that the FBI contacted them about this matter. (*See* Gastélum Decl. Exs. 1, 2, ECF No. 108-2.)

| 1 | Film Allman points out that the new FBI investigation is not its only ground for seeking the Court's reconsideration. (Mot. for Reconsideration 3.) However, its other arguments—that the Court did not read policy exclusions in favor of the policyholder and that the Court misattributed knowledge of one person to others—fail to meet any of the bases for reconsideration in the Local Rules. *See* C.D. Cal. L.R. 7-18. The Court's Order clearly outlines its reasoning for finding against Film Allman on both of these points. (*See* Order Denying Pl. Mot. for Leave to Amend and Granting Def. Mot. for Partial Summ. J. 8–9.)

Lastly, Film Allman suggests that New York Marine's tactic of allegedly taking opposing positions throughout this litigation amounts to fraud on the Court. (Mot. for Reconsideration 7.) This is a sham argument, as Federal Rule of Civil Procedure 8(d)(3) "permits a party to plead alternative legal arguments, even if they are inconsistent." *Clear Connection Corp. v. Comcast Cable Commc'ns Mgmt, LLC*, 149 F. Supp. 3d 1188, 1205 (E.D. Cal. 2015) (citing *Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1218 (6th Cir. 1990). Film Allman has not presented any compelling reason for the Court to reconsider its earlier decision, and as such, the Court **DENIES** the Motion for Reconsideration.

/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** New York Marine's Motion for Summary Judgment (ECF No. 93) and **DENIES** Film Allman's Motion for Reconsideration (ECF No. 108). The Clerk of Court shall close the case, and a separate Judgment will issue.

**IT IS SO ORDERED.**

May 22, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**